IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARYANNE MCCAULEY,         ) | |
| ) | |
| Plaintiff,    ) | |
| ) | CIVIL ACTION |
| vs.       ) | |
| ) | FILE No. |
| MARK TWAIN VILLAGE LLC,    ) | |
| MARK TWAIN VILLAGE TIC 2 LLC and    ) | |
| MARK TWAIN VILLAGE TIC 3 LLC,    ) | |
| ) | |
| Defendants.    ) | |

## COMPLAINT

COMES NOW, MARYANNE MCCAULEY, by and through the undersigned counsel, and files this, her Complaint against Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendants' MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC, failure to remove physical barriers to access and violations of Title III of the ADA.

1

## PARTIES

2.      Plaintiff MARYANNE MCCAULEY (hereinafter "Plaintiff") is and has been at all times relevant to the instant matter, a natural person residing in St. Peters, Missouri, (St. Charles County).

3.      Plaintiff is disabled as defined by the ADA.

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, MARK TWAIN VILLAGE LLC (hereinafter "MARK TWAIN VILLAGE LLC") is a foreign limited liability company that transacts business in the State of Missouri and within this judicial district.

8.      Defendant, MARK TWAIN VILLAGE LLC, may be properly served with

2

process via its Owner for service, to wit:  c/o National Registered Agents, Inc., 120 South Central Avenue, Clayton, MO  63105.

9.       Defendant, MARK TWAIN VILLAGE TIC 2 LLC (hereinafter "MARK TWAIN VILLAGE TIC 2LLC") is a foreign limited liability company that transacts business in the State of Missouri and within this judicial district.

10.       Defendant, MARK TWAIN VILLAGE TIC 2 LLC, may be properly served with process via its Owner for service, to wit:  c/o National Registered Agents, Inc., 120 South Central Avenue, Clayton, MO  63105.

11.       Defendant, MARK TWAIN VILLAGE TIC 3 LLC (hereinafter "MARK TWAIN VILLAGE TIC 3 LLC") is a foreign limited liability company that transacts business in the State of Missouri and within this judicial district.

12.       Defendant, MARK TWAIN VILLAGE TIC 3 LLC, may be properly served with process via its Owner for service, to wit:  c/o National Registered Agents, Inc., 120 South Central Avenue, Clayton, MO  63105.

## FACTUAL ALLEGATIONS

13.       On or about March 21, 2022, Plaintiff was a customer at "Qdoba Mexican Eats," a business located at 1315 Bass Pro Drive, St. Charles, MO  63301, referenced herein as "Qdoba".  *See* Receipt attached as Exhibit 1.  *See* also photo of Plaintiff attached as Exhibit 2.

14.       Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC, are the owners or co-owners of the real property and improvements that Qdoba is situated upon and that is the subject of this action, referenced herein as the "Property."

15.       Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2

LLC and MARK TWAIN VILLAGE TIC 3 LLC, are responsible for complying with the ADA for both the exterior portions and interior portions of the Property.  Even if there is a lease between Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC, and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendants' requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.  *See* 28 CFR § 36.201(b).

16.     Plaintiff's access to Qdoba and other businesses at the Property, located at 1315 Bass Pro Drive, St. Charles, MO  63301, St. Charles County Property Appraiser's property identification number T020600006 and T0406000007 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of her disabilities, and she will be denied and/or limited in the future unless and until Defendants are compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

17.     Even though the Property is comprised of two separate parcels, it should be considered as one "site" for purposes of this lawsuit due to the fact that they are owned by the same entities, the two parcels share a common parking lot, and there are business located on either parcel but advertised by Defendants as being part of the same shopping center called, "Mark Twain Village."

18.     Plaintiff lives 10 miles from the Property.

19.     Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often

drives by the Property.

20.     Plaintiff has visited the Property at least once before as a customer and advocate for the disabled.  Plaintiff intends on revisiting the Property within six months after the barriers to access detailed in this Complaint are removed and the Property are accessible again.  The purpose of the revisit is to be a return customer, to determine if and when the Property are made accessible and to maintain standing for this lawsuit for Advocacy Purposes.

21.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer as well as for Advocacy Purposes but does not intend to re-expose herself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

22.     Plaintiff travelled to the Property as a customer and as an independent advocate for the disabled, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

23.     Although Plaintiff may not have personally encountered each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the Complaint in a subsequent visit as, for example, one accessible parking space may not be available and she would need to use an alternative accessible parking space in the future on her subsequent visit.  As such, all barriers to

access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

24.     Plaintiff's inability to fully access the Property and the stores in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I

## VIOLATIONS OF THE ADA AND ADAAG

25.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

26.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an

equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

27.      Congress explicitly stated that the purpose of the ADA was to:

(i)      provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

         * * * * *

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

28.      The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

29.      The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

30.      The Property is a public accommodation and service establishment.

31.      Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

32.      Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

33.    The Property must be, but is not, in compliance with the ADA and ADAAG.

34.    Plaintiff has attempted to, and has to the extent possible, accessed the Property in her capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of her disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

35.    Plaintiff intends to visit the Property again as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of her disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

36.    Defendants, 1315 Bass Pro Drive, St. Charles, MO  63301, have discriminated against Plaintiff (and others with disabilities) by denying her access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

37.    Defendants, 1315 Bass Pro Drive, St. Charles, MO  63301, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, 1315 Bass

Pro Drive, St. Charles, MO  63301, are compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

38.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

(i)     In front of Qdoba, there is at least one accessible parking space that does not have a marked access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards. This barrier to access makes it nearly impossible for an individual in a wheelchair to enter and exit their vehicle at this accessible parking space due to the close presence of parked vehicles on either side of the accessible parking space not providing enough room for the wheelchair, this eliminates the accessible route from this accessible parking space.

(ii)    In front of Qdoba, the accessible parking space identified in (i) above is also located on the shortest distance to the accessible route leading to the accessible entrances in violation of Section 208.3.1 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the units of the Property from this accessible parking space as the far location increases the likelihood of traversing into the vehicular way and getting struck by a vehicle or encountering a barrier to access which stops Plaintiff from accessing the public accommodations offered at the Property.

(iii)    In front of Qdoba, there are three accessible parking spaces that have a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(iv)    In front of Qdoba, one of the three accessible parking spaces is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(v)    Between Qdoba and Chinese House Buffet across the vehicular way, there are four accessible parking spaces that have a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(vi)    Between Qdoba and Chinese House Buffet, across the vehicular way, the ground surfaces of the four accessible spaces have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces (including a crack going the length of all four spaces) or otherwise fail to comply with Sections 502.4, 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

(vii)     Between Qdoba and Chinese House Buffet, across the vehicular way, the four accessible parking spaces are not located on the shortest distance to the accessible route leading to the accessible entrances in violation of Section 208.3.1 of the 2010 ADAAG Standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the units of the Property from these accessible parking spaces as the far location increases the likelihood of traversing into the vehicular way and getting struck by a vehicle or encountering a barrier to access which stops Plaintiff from accessing the public accommodations offered at the Property.

(viii)    Between Qdoba and Chinese House Buffet, on the accessible route directly in front of the public accommodations, the walking surfaces of the accessible route have a slope in excess of 1:20 (and are actually closer to 1:12) in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property. As the accessible route is in excess of 1:20, it is considered an accessible ramp, moreover, it has a total rise greater than six (6) inches yet does not have handrails in compliance with Section 505 of the 2010 ADAAG standards, this is a violation of Section 405.8 of the 2010 ADAAG Standards.  This barrier to access would make it difficult for Plaintiff to access the units of the Property as ramps are often more difficult for disabled individuals to traverse and require handrails on both sides so that the disabled individual can use the handrail to assist them up the sloped surface.

(ix)     Between Qdoba and Chinese House Buffet, in the same area as the barrier to access identified in (viii) above, the walking surfaces of the accessible route have vertical rises in excess of ¼ (one quarter) inch in height, are not stable or slip resistant, have broken or unstable surfaces or otherwise fail to comply with Sections 302 and 303 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property.

(x)      At Unit 1357, the maneuvering clearance of this accessible entrance is not level (surface slope in excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand.  When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the inappropriately higher slope.

(xi)     Due to the barrier to access identified in (x) above, not all entrance doors and doorways comply with Sections 404 of the 2010 ADAAG standards, this is a violation of Section 206.4 of the 2010 ADAAG standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the interior of the Property.

(xii)    Across the vehicular way from Unit 1355, there are four accessible parking spaces that have a cross slope in excess of 1:48 (and closer to a very dangerous 3%) in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This

12

barrier to access would make it dangerous and difficult for Plaintiff to enter and exit the vehicle as a level surface is needed so the wheelchair does not tip over and injure Plaintiff as excessive cross-slopes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

(xiii)   Defendants fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

39.   The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

40.   Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

41.   The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

42.   All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA.

43.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

44.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC, have the financial resources to make the necessary modifications since

the two parcels are collectively valued at $12,237,597.00 according to the Property Appraiser website.

45.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable.

46.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendants have available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

47.     Upon information and good faith belief, the Property have been altered since 2010.

48.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

49.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC, are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

50.     Plaintiff's requested relief serves the public interest.

51.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC.

52.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of

litigation from Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

53.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendants, MARK TWAIN VILLAGE LLC, MARK TWAIN VILLAGE TIC 2 LLC and MARK TWAIN VILLAGE TIC 3 LLC, to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses and costs; and

(e)      That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: June 13, 2022.
Respectfully submitted,

Law Offices of
THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
State Bar No. 54538FL
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com


ATTORNEYS FOR PLAINTIFF
MARYANNE MCCAULEY